## W. Scott Marshall, Admr.

*v.*

## Marietta E. Coleman *et al.*

*Opinion filed October 19, 1900—Rehearing denied December 7, 1900.*

1. Executors and administrators—*correctness of annual report may be attacked on final report.* Upon the presentation of an administrator's final report in answer to a citation, the court may hear testimony for the purpose of contradicting and surcharging the former reports and accounts of the administrator, and may correct such reports if the evidence warrants.

2. Same—*county court may compel administrator to render a just account.* If an administrator, through bad faith or the failure to exercise reasonable diligence, diminishes the funds in his hands for distribution, he may be required to render a just and true account by the county court in the exercise of its equitable powers.

3. Same—*when administrator must interpose Statute of Limitations.* An administrator should interpose Statute of Limitations against a claim composed of barred items, particularly if the claim is not otherwise justly due or well founded.

4. Same—*when the administrator should not allow claim for care and maintenance.* A claim for ten years' care and maintenance of the deceased, purporting to be presented by his grandmother, should not be allowed by the administrator, where the grandfather of the deceased, who was living during such period, furnished the home to the deceased, and there is no evidence to overcome the presumption that such home was extended gratuitously.

5. Evidence—*advancements must be evidenced in writing.* Under section 7 of the Statute of Descent no gift or grant shall be deemed to have been made as an advancement unless it is expressed or charged in writing by the donor as an advancement or acknowledged in writing by the donee.

6. Same—*proof of loss of instrument is unavailing without secondary evidence.* Proof of the loss of a written instrument alleged to show an advancement is unavailing without secondary proof of the contents of such instrument.

7. Same—*rule as to admissibility of book accounts applies to books of deceased person.* The rule that book accounts are only admissible in favor of the party who keeps them when the entries are made contemporaneously with the transactions recorded, applies to the books and entries of a deceased person.

8. Maxims—*maxim ignorantia legis neminem excusat does not apply to laws of foreign States.* Ignorance of the law such as will not excuse

is ignorance of the laws of one's own State, but not the laws of a foreign country or State.

9. FIDUCIARY RELATIONS—*advantage gained by abuse of fiduciary relation cannot stand.* An advantage gained at the expense of the confiding party by an abuse of a fiduciary or confidential relation will not be permitted to stand, even though the transaction could not be impeached but for the existence of such relation.

10. INTEREST—*when administrator may be charged with ten per cent interest.* Under section 114 of the Administration act an administrator is chargeable with ten per cent annual interest on moneys, notes, bonds and credits in his possession and control as assets of the estate, after a period of two years and six months from the date of his letters, unless good cause is shown why the same should not be charged.

11. APPEALS AND ERRORS—*effect of appeal by administrator from order rejecting one item.* An appeal by an administrator from an order or judgment disallowing one of his claims against the estate only brings up for review the ruling in respect to that particular claim, and the allowance of other claims cannot be questioned by the assignment of cross-errors.

12. SAME—*when rule as to effect of separate appeal by administrator does not apply.* If a part of a single claim by an administrator is allowed and part rejected, the fact that the administrator appeals only from the order disallowing such part does not preclude the assignment of cross-error upon the allowance of the other part.

13. COSTS—*when administrator is properly required to pay costs.* It is proper for the court to tax the costs of a proceeding against the administrator personally, if such costs are incurred as a result of his own misconduct.

*Marshall* v. *Coleman,* 89 Ill. App. 41, affirmed in part.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Marion county; the Hon. TRUMAN E. AMES, Judge, presiding.

The appellant, W. Scott Marshall, administrator of the estate of Edward B. Goodner, deceased, filed on January 5, 1897, in the county court of Marion county his final report as administrator in compliance with an order of the probate court, made on a citation issued at the instance of the appellee, Marietta E. Coleman. This final report was of his acts and doings as such administrator

from August 24, 1892, to January 5, 1897, and was a summary of former reports made by him as administrator, the first report having been filed on September 19, 1894, being of his acts and doings as such administrator from December 1, 1892, to September 14, 1894; the second annual report having been filed on February 26, 1895, and being of his acts and doings as administrator from September 14, 1894, to February 25, 1895; the third report having been filed on September 2, 1895, and being of his acts and doings as such administrator from the date of his second report to August 31, 1895; the fourth annual report having been filed on October 3, 1896, and being of his acts and doings as such administrator from the date of his third report to October 3, 1896; and the fifth report, being the report so as aforesaid made on January 5, 1897, as a final report in answer to the citation issued as aforesaid. Orders were entered by the county court, approving the first four reports above mentioned at or about the respective dates at which they were filed. Exceptions were filed in January, 1897, to certain items in the first, third and fifth reports of the appellant, as such administrator, by the appellees, as heirs of the intestate, Edward B. Goodner, deceased. These exceptions charge neglect, fraud and collusion on the part of the appellant, as administrator, in the allowance of the claims specified in said items as being unjust and illegal claims, the exceptions charging not only that each of said claims was unjust, illegal and invalid, but that it was barred by the Statute of Limitations at the time of its presentation against the estate; and that said claims were allowed by the appellant as administrator without honestly interposing legal defenses thereto, and by his collusion.

On April 8, 1897, after hearing had and testimony heard, the county court entered a judgment, sustaining the exceptions in part, disallowing the sum of $1560.00 paid by appellant upon the claim of Harriet E. Marshall, and ordering appellant to reform his final report

by charging himself with $1560.00 and interest for two years thereon at five per cent from February 1, 1893; also disallowing the amount paid or refunded by appellant, as administrator of the estate of Edward B. Goodner, deceased, to-wit, the sum of $3500.00 paid to James E. Marshall, administrator of the estate of Edward B. Marshall, deceased, the amount so refunded having been the one-half of an alleged advancement of $7000.00 claimed by appellant to have been made by the said Edward B. Marshall in his lifetime to his daughter, Melvina Goodner, since deceased, and in her lifetime the wife of Dr. Lyman T. Goodner, said Melvina Goodner being the mother of the deceased, Edward B. Goodner, and charging appellant as such administrator with said sum of $3500.00 and interest for two years at five per cent; also charging appellant with $56.00 allowed to him on his claim for medical services; also setting aside the claim of Charles P. Marshall in part, and charging appellant as administrator with $168.00 thereof; ordering that appellant, the administrator, be allowed $75.74 additional fees, and disallowing his claim of $53.23 (or $52.27) for his cash outlay, making in all the sum of $5954.72; and directing distribution of the effects in kind as noted in the report.

From the judgment so entered by the county court appeal was taken by the appellant, W. Scott Marshall, administrator, to the circuit court of Marion county. On April 28, 1897, the final report, together with the other reports of the appellant as administrator, and the exceptions of the appellees above named, were filed in the circuit court. A hearing was had *de novo* in the circuit court, and on May 12, 1898, a decree or judgment was entered by the circuit court, finding that the exceptions to the final report of the appellant as administrator were in the main sustained by the evidence, and should be allowed as therein specified; that appellant had, by negligence and collusion, failed to interpose legal and statutory defenses in the allowance of claims against the

estate, and had failed without sufficient cause to make
final settlement of said estate within the period required
by statute; and finding that appellant should be charged
with the following claims or parts of claims, with proper
interest, as follows: $1560.00 of the claim of Harriet E.
Marshall with ten per cent interest for three years and
two months, a total of $2054.00; $168.00 of the claim of
Charles P. Marshall with ten per cent interest for three
years and two months, a total of $221.20; $14.88 of the
claim of expense of administration; $1750.00 of the claim
of J. E. Marshall, administrator of the estate of E. B.
Marshall, deceased, with ten per cent interest for two
years, seven months and twenty-seven days, in favor of
the plaintiff, Nellie May Goodner, a total of $2215.18;
and, thereupon, it was ordered and decreed therein that
the appellant, as administrator of the estate of Edward
B. Goodner, deceased, should be charged with $26.24 re-
ported by him as on hand in his final report, and that his
account should be surcharged with the items last above
named, and that the said appellant should reform his
final account, as administrator as aforesaid, in the manner
above set forth, charging himself with the above named
sums of $26.24, $221.20, $14.88, $2054.00, and $2215.18, de-
ducting from the latter amount six per cent commis-
sions on $1750.00, leaving $2110.18; and making the whole
amount charged against appellant $4426.50. The decree
or judgment directed that, of this amount, he should pay
to Marietta E. Coleman $1158.16, and to Nellie May Good-
ner $3268.34. It was also therein ordered, that the costs
of the proceeding, including the costs of the probate
court, should be paid by the administrator from his per-
sonal funds. Appellant excepted to the decree and all its
findings and prayed an appeal to the Appellate Court.

Upon appeal to the Appellate Court the Appellate
Court rendered a judgment as follows, to-wit: that "the
decree of the circuit court, requiring appellant to sur-
charge himself with $1560.00 of the item of the claim of

Harriet E. Marshall with ten per cent interest, is affirmed; and the decree, requiring him to surcharge himself with $14.88 of appellant's claim for expenses, is also affirmed; the decree, requiring appellant to surcharge himself with $168.00 of the claim of Charles P. Marshall, is reversed; the decree, requiring appellant to surcharge himself with $1750.00, and ten per cent interest, of the $3500.00 item, and that Mrs. Coleman is estopped from any claim to said item, is affirmed; the decree, charging appellant with costs to be paid out of his private funds, is affirmed; three-fourths of the costs in this (Appellate) court will be taxed to appellant and one-fourth to appellees; and the cause is remanded to the circuit court with instructions to enter a decree in accordance with the views herein expressed."

The present appeal is prosecuted from the judgment, so as above entered by the Appellate Court.

Edward B. Marshall was a physician and banker, who lived for many years before his death in Centralia, Illinois. He died intestate at that place on April 17, 1890, leaving an estate of more than $124,000.00. He left, him surviving, his widow, Harriet E. Marshall and four sons, to-wit: W. Scott Marshall, James E. Marshall, Xenophon S. Marshall and Charles P. Marshall, and two grandchildren, the children of a deceased daughter, Melvina E. Goodner, wife of Dr. Lyman T. Goodner, said grandchildren being Marietta E. Goodner, now Marietta E. Coleman, wife of Carlton M. Coleman of Colorado, and Edward B. Goodner. Mrs. Melvina E. Goodner died before her father, Dr. E. B. Marshall, died, and left, her surviving, her husband, Dr. Lyman T. Goodner, and two children, the said Edward B. Goodner, and Marietta E. Goodner above named. Dr. Lyman T. Goodner, after the death of his wife, Melvina E. Goodner, and on August 24, 1876, married one Helen L. Chapman, thereafter Helen L. Goodner. Dr. Lyman T. Goodner in his lifetime lived at Nashville in Washington county, Illinois. By his second wife,

187—36

Helen L. Goodner, he had a child, to-wit, the appellee, Nellie May Goodner, born on August 2, 1878. Dr. Lyman T. Goodner died on March 20, 1880, leaving no estate. After the death of their father, Lyman T. Goodner, the two children, Edward B. Goodner and Marietta E. Goodner, ceased to live with their step-mother, Helen L. Goodner, at Nashville, and went to Centralia to live with their grandfather, Edward B. Marshall, the father of their deceased mother. There is some testimony, going to show that Marietta E. Goodner went to live with her grandfather before his death, to-wit, in 1878. Marietta E. Goodner, from 1878 or 1880, and Edward B. Goodner, from 1880 up to the time of his grandfather's death in 1890, lived with their grandfather in Centralia. The two grandchildren were brought up or raised by their grandfather in his family, and as members of his family.

After the death of Dr. Edward B. Marshall, his son, James E. Marshall, was appointed administrator of his estate. Charles P. Marshall was appointed guardian of his nephew, Edward B. Goodner.

Edward B. Goodner died intestate on April 15, 1892, being then unmarried, and a minor a little over nineteen years of age, and leaving no children, but leaving, as his only heirs-at-law, his sister of the whole blood, Marietta E. Goodner, afterwards Marietta E. Coleman, one of the appellees herein, and his sister of the half blood, Nellie May Goodner, the other of the appellees herein. On August 24, 1892, the appellant, W. Scott Marshall, the uncle of Edward B. Goodner, filed a petition in the county court of Marion county, asking that he be appointed administrator of the estate of his nephew, Edward B. Goodner, deceased; and in said petition stated that Edward B. Goodner had died seized and possessed of real and personal property consisting solely of a distributive share in the estate of E. B. Marshall, deceased, and also stating that said Edward B. Goodner left him surviving his sister, Marietta E. Goodner, as his heir, but saying noth-

ing about his half-sister, Nellie May Goodner. The appellant, W. Scott Marshall, was, in accordance with the prayer of his petition, appointed administrator of the estate of Edward B. Goodner, deceased, on August 24, 1892.

Xenophon S. Marshall, one of the sons of Dr. E. B. Marshall, died after the death of his father, and also after the death of his nephew, Edward B. Goodner, to-wit, in 1893, and left him surviving no widow or child or children or the descendants of any child or children. No administration was ever taken out upon his estate. Nellie May Goodner was born August 2, 1878, and consequently became of age on August 2, 1896.

On June 20, 1892, two months before the appellant was appointed administrator of the estate of Edward B. Goodner, deceased, James E. Marshall, then cashier of the bank in Centralia, of which his brother, the appellant, W. Scott Marshall, was the president, made out a claim, in favor of his mother, Mrs. Harriet E. Marshall, the widow of Dr. E. B. Marshall, against the estate of his nephew, Edward B. Goodner, for $1926.85, consisting of two items, to-wit: "To care and maintenance from April 17, 1880, to April 17, 1890, of Edward B. Goodner, 520 weeks at $3.00 per week, $1560.00; to care and maintenance from April 17, 1890, to February 2, 1892, of Edward B. Goodner, 91 weeks and five days, at $4.00 per week, $366.85." This claim, as appears from an affidavit thereto annexed, was sworn to by Harriet E. Marshall on June 20, 1892, before her son, James E. Marshall, as notary public. This claim was filed against the estate of Edward B. Goodner on January 3, 1893; and there appears among the papers of the estate the following document, signed by W. Scott Marshall as administrator of E. B. Goodner's estate, to-wit: "And now comes W. Scott Marshall, administrator of the within named estate, and enters his appearance and waives issuing of process as to this claim, without objection to its allowance." The claim was marked "allowed" by the appellant, as admin-

istrator. On January 3, 1893, a claim for $298.00 in favor of Charles P. Marshall against the estate of his deceased nephew, Edward B. Goodner, was filed in said county court, consisting of five items dated in 1886, 1887, 1888, 1889 and 1890 for medical services, claimed to have been rendered to Edward B. Goodner, deceased, in his lifetime and in those years. This claim was sworn to, as appears from the annexed affidavit, by Charles P. Marshall, and was allowed by W. Scott Marshall, administrator.

After the death of her grandfather, Dr. E. B. Marshall, on April 17, 1890, the appellee, Marietta E. Coleman, then Marietta E. Goodner, lived in the family of her grandmother, Harriet E. Marshall, up to some time in 1893 or 1894, when she went to Colorado on account of her health. She went to Colorado on June 6, 1894, and lived at Monument in that State. While there she married Carlton M. Coleman, who was then a resident of Colorado.

At the July term, 1895, of the county court of Marion county and about July 1, 1895, James E. Marshall, as administrator of the estate of his deceased father, Edward B. Marshall, deceased, filed a petition in said county court, stating that as administrator he had received $124,787.25, and had paid out for funeral expenses and other indebtedness $12,764.28, stating the names of the heirs left by E. B. Marshall, the marriage of his daughter, Melvina, with Lyman T. Goodner, and that Edward B. Marshall made large advancements in money and other property for the support and comfort of Melvina E. Goodner and her husband, amounting to the sum of $7000.00; also stating the death of Edward B. Goodner, intestate, "leaving no widow, child or children, or any descendants of a child or children, but leaving Marietta E. Coleman, *nee* Goodner, his only sister, and no brothers him surviving;" also stating the appointment of appellant, W. Scott Marshall, as administrator of Edward B. Goodner's estate, and that he was not as yet able to make final report and be dis-

charged. This petition also stated that James E. Marshall, as administrator of Edward B. Marshall's estate, from time to time made distribution to the widow and heirs of his father's estate, and in so distributing had by "mistake and inadvertence" paid to Marietta E. Coleman (formerly Goodner) and to the said Edward B. Goodner before his death, and since his death to his administrator, each the sum of $3500.00 more than in law they were entitled to out of the assets of said E. B. Marshall's estate. The petition represented, that Marietta E. Coleman had refunded to the petitioner the sum of $3500.00, so paid to her by mistake and inadvertence, but that W. Scott Marshall, administrator as aforesaid, refused to pay back and refund to the petitioner the said sum of $3500.00, so paid to Edward B. Goodner and to his administrator; and the petition prayed for an order, requiring and directing the appellant, as administrator of said Edward B. Goodner's estate, to refund and pay back to petitioner, James E. Marshall, the sum of $3500.00 above mentioned out of the assets received by him from petitioner.

With this petition was filed a document, dated June 25, 1895, signed by Marietta E. Coleman, in the body of which she is described as "sole heir-at-law of the estate of Edward B. Goodner, deceased," and thereby consents that the said W. Scott Marshall, administrator of the estate of Edward B. Goodner, should pay back to James E. Marshall, as administrator of the estate of Edward B. Marshall, the sum of $3500.00, alleged to be an amount paid to the estate of Edward B. Goodner by said James E. Marshall, as administrator of the estate of Edward B. Marshall, deceased, through inadvertence and mistake.

A document, dated January 14, 1895, was drawn up and signed in Marion county by Charles P. Marshall, W. Scott Marshall and James E. Marshall, and was then forwarded to Colorado to Marietta E. Coleman, who signed the same under the signatures of her three uncles on or about January 25, 1895, and returned the same to

her uncle, Charles P. Marshall, at Centralia. By this document, dated January 14, 1895, the signers thereof, calling themselves the only surviving heirs-at-law of Edward B. Marshall, deceased, recognized and admitted the advancement to Melvina E. Goodner and to her husband, Lyman T. Goodner, "as advancement to them, and that the same was received by them during their lives as advancement, and by them was acknowledged and received from year to year from May 1, 1866, up to October 1, 1878, amounting to the sum of $7000.00, which sum was as such advancement understood and agreed should be deducted from the distributive share of said Melvina E. Goodner out of the estate of her father, E. B. Marshall, at his death, and the distribution of his estate among his said children and grandchildren." This last named document was also filed in the county court of Marion county.

In May or June, 1895, Marietta E. Coleman, and her husband, Carlton M. Coleman, came on from Colorado to Centralia in response to a letter written to Mrs. Coleman by her uncle, Charles P. Marshall, on April 30, 1895, in which he stated to her that the heirs to the real estate of E. B. Marshall, deceased, were contemplating a partition or division of the same, and asking her whether she wished to settle the matters in a court of law or to make an offer to sell her share in said estate for cash, and closing with these words: "We will entertain an offer of sale from you if made within fifteen days." Upon their arrival in Centralia and on June 5, 1895, Mrs. Coleman and her husband and her three uncles, James E. Marshall, W. Scott Marshall and Charles P. Marshall, signed a certain agreement, reciting that she and her husband that day sold, by three quit-claim deeds of that date, to her three uncles all their interest in the real estate, of which Edward B. Marshall died seized, for $3700.00. It is also stated in said document, dated June 5, 1895, that the advancement of $7000.00 above mentioned was made by

E. B. Marshall in his lifetime to his daughter, Melvina E. Goodner, and that by mistake and inadvertence James E. Marshall, as administrator of the estate of Edward B. Marshall, deceased, had paid to Mrs. Coleman $3500.00, half of said advancement, and also had paid by inadvertence and mistake the other half thereof to W. Scott Marshall, the administrator of the estate of Edward B. Goodner, deceased, being $3500.00; and the agreement recites that the refunding of said advancement is to be a part of the consideration of the purchase of said real estate, and states the manner in which it is to be refunded. The agreement also contains certain provisions as to what is to be done in case any contest shall arise over the validity of said advancement.

On July 1, 1895, in the matter of the estate of E. B. Goodner, deceased, an order was entered reciting as follows: "Comes J. E. Marshall, administrator of the estate of E. B. Marshall, deceased, * * * and files his petition praying for an order on W. Scott Marshall, administrator aforesaid, to refund to the petitioner the sum of $3500.00, heretofore distributed and paid over to him for the benefit of the heirs of E. B. Goodner, deceased; and the court being now sufficiently advised in the premises orders that the prayer of the petitioner be granted." Said sum of $3500.00 was accordingly paid over by the appellant, as administrator, to his brother, James E. Marshall, as administrator, in accordance with said order.

W. F. BUNDY, for appellant.

G. A. HOFF, ALONZO HOFF, and CHARLES T. MOORE, for appellees.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

*First*—The appellees in this case attack certain items in the final report of appellant, as administrator of the estate of their deceased brother, Edward B. Goodner.

These items represent moneys, paid out by the appellant as such administrator upon certain claims filed against the estate. It is charged, that these claims were improperly allowed by the appellant as such administrator, and that he was guilty of fraud and collusion in so allowing the same, and neglected his duty in not presenting proper defenses thereto. The two main items, contested by the appellees, are $1560.00, with interest thereon, paid upon a claim filed by Harriet E. Marshall, mother of appellant and grandmother of appellee, Marietta E. Coleman; and $3500.00, refunded by the appellant out of the moneys of the estate of Edward B. Goodner, deceased, to appellant's brother, James E. Marshall, administrator of the estate of Edward B. Marshall, deceased, father of appellant and grandfather of appellee, Marietta E. Coleman, being the half of an advancement of $7000.00, alleged to have been made by Edward B. Marshall, deceased, in his lifetime to his daughter, Melvina E. Goodner, and her husband, Lyman T. Goodner, sister and brother-in-law of the appellant, and mother and father of the appellee, Marietta E. Coleman. The contest here is not between the holders of these claims, or of the judgments entered by the county court allowing these claims, on the one side, and the administrator of the estate of Edward B. Goodner, deceased, on the other. The contest here arises out of exceptions, made to the final report of the appellant, as administrator, by the appellees, as heirs of the estate of Edward B. Goodner, deceased. The claims objected to were allowed by the county court originally; and it is claimed by the appellant that, having been allowed, they were judgments entered in regular form, and cannot be attacked in the county court through exceptions to the final report made to that court.

When the exceptions' were filed by appellees, the estate had not been closed, and the administrator presented his final report in answer to a citation, requiring him to do so. This final report recapitulated the items in four

reports previously made by him to the court. The whole matter was within the control of the county court, and, upon exceptions to the final report, the items in the former reports were subject to review and correction by the county court.

The general rule, as announced in the text-books, is that "a partial or annual account is only a judgment *de bene esse*, often rendered *ex parte*, and only *prima facie* correct. On final settlement it may be opened to correct errors due to fraud or mistake, although the error was not excepted to or appealed from when the partial account was rendered." (7 Am. & Eng. Ency. of Law,—1st ed.— pp. 442-446). The allowance of a claim by the county court is not conclusive against the heir excepting to the administrator's final report, when such allowance is subject to impeachment for fraud or collusion in a court of equity. (*In re Corrington*, 124 Ill. 363; *Ward* v. *Durham*, 134 id. 195; *Shepard* v. *Speer*, 140 id. 238; *Schlink* v. *Maxton*, 153 id. 447). A judgment, allowing a claim against the estate of a deceased person, is only conclusive against the heir-at-law, or devisee, in respect to personal estate, where there has been no fraud or collusion in the rendition of such judgment. (*Ward* v. *Durham, supra*). The heir always has a standing in court to institute a proceeding to set aside the allowance of a claim by the probate court through fraud; and the county court, in the settlement of estates of deceased persons, exercises an equitable jurisdiction. (*Schlink* v. *Maxton, supra*, and cases there cited). In *Bliss* v. *Seaman*, 165 Ill. 422, the facts showed, that the appellees there introduced in evidence the several reports and accounts of an executor, which had been approved by the probate court, and then introduced testimony for the purpose of contradicting and surcharging said reports and accounts; and it was there contended, that the adjudications of the probate court, and orders made by it approving the different reports and partial settlements, were final and conclusive judg-

ments and not subject to collateral attack, and that said reports and accounts could not be impeached in the manner, in which the reports and accounts of appellant are sought to be impeached by the exceptions, filed in the case at bar to the final report of appellant as administrator; and this court there said (p. 428): "The statute (sec. 112, chap. 3) makes provision that all executors and administrators shall, every year, exhibit accounts of their administration, but that no final settlement shall be made and approved by the court unless the heirs of the decedent have been notified thereof. A partial or annual account of an executor or administrator is usually an *ex parte* proceeding, and is only a judgment *de bene esse* and only *prima facie* correct, and, although not excepted to or appealed from, is open to subsequent correction or challenge." We are, accordingly, of the opinion that, as the estate of the deceased, Edward B. Goodner, was not closed, the county court of Marion county had a right, when appellant's final report was presented for approval, to hear testimony for the purpose of contradicting and surcharging his former reports and accounts as administrator, and to surcharge and correct the same, if the testimony so introduced justified such action. (*Millard* v. *Harris*, 119 Ill. 185; *Long* v. *Thompson*, 60 id. 27; *Curts* v. *Brooks*, 71 id. 125).

*Second*—The amount of the claim of Harriet E. Marshall, mother of appellant and grandmother of appellee, Marietta E. Coleman, which was allowed against the estate of Edward B. Goodner, deceased, was $1926.85. As to $366.85 of this amount there seems to be no dispute. The contention is as to $1560.00 of the claim, recited on its face to be for "care and maintenance from April 17, 1880, to April 17, 1890, of Edward B. Goodner, 520 weeks, at $3.00 per week." In regard to this claim the Appellate Court say in their opinion: "That the claim was conceived in fraud, and that appellant knew it and assisted in carrying out the scheme, the evidence leaves

little doubt in our minds." The same conclusion in regard
to the claim, thus announced by the Appellate Court, was
reached by the county court and the circuit court. After
a careful examination of the record, we concur in what
is thus said by the Appellate Court.

This claim of $1560.00 was made out by James E. Mar-
shall on June 20, 1892, two months before any adminis-
trator was appointed upon the estate of his nephew, Ed-
ward B. Goodner. The evidence shows that, after James
E. Marshall made out this claim, he presented it to his
mother, and obtained her oath to its correctness. It was
made out two years after the death of Edward B. Mar-
shall. The appellee, Marietta E. Coleman, was present
when the claim was presented to her grandmother by
her uncle, James E. Marshall. James E. Marshall figured
up how much his nephew's board would be for about thir-
teen years, and, when appellee, Marietta E. Coleman,
expressed her surprise, and asked whether her grand-
mother was going to charge her brother's estate for his
board, James E. Marshall answered: "No, this will be fig-
ured up, and your grandma will sign a receipt, which will
be all right to make it look as though she received the
money. It will be taken out of your mother's estate to
protect your interest from this little half-sister." When
James E. Marshall left, Mrs. Harriet E. Marshall said to
her grand-daughter, that she did not understand these
things, and that she might be signing her rights away.
The testimony shows clearly, that Harriet E. Marshall
herself had her doubts about the justness and correctness
of presenting any such claim.

The appellee, Nellie May Goodner, was born in 1878,
the year when Marietta E. Goodner went to live with her
grandfather at Centralia. Her half-sister, Nellie May
Goodner, remained with the mother of the latter, Mrs.
Helen L. Goodner, who was the step-mother of appellee,
Marietta. The half-sister lived in Nashville, in Wash-
ington county, while Marietta lived with her grandfather

in Centralia, and it is evident from the testimony that
Marietta had not seen much of her step-mother, or half-
sister, for many years when the matter of this claim
came up. She was made to believe by her uncles, that
her half-sister was intending to make a claim upon her
deceased brother's estate, which was unjust, and not war-
ranted by the law. She was ignorant of the law, and the
fact, that her half-sister was as much an heir of her.
deceased brother as she herself was, was concealed from
her. The uncles of Marietta, who was then young and
inexperienced, inspired her with the fear that her half-
sister was intending to take more of her deceased broth-
er's estate than was just, and this fear was worked upon
to keep her from making any opposition to the claim
presented against the estate of her brother in the name
of her grandmother. The object of making out and pre-
senting that claim was to reduce as much as possible the
interest in Edward B. Goodner's estate, which would go
to his half-sister, the appellee, Nellie May Goodner. As
is said by the Appellate Court in their opinion in decid-
ing this case: James E. Marshall intended "to deplete
the estate of his dead nephew by turning as much of it
as possible back into the Marshall family, and this pur-
pose will be more clearly seen from the claimed 'advance-
ment' hereinafter referred to."

After the claim was made out and sworn to, the ap-
pellant, W. Scott Marshall, filed a petition asking the
county court to appoint himself administrator of the
estate of Edward B. Goodner, deceased. Shortly after
his appointment as such administrator, this claim was
presented in the county court, and the appellant, as ad-
ministrator, made no defense against it, but entered his
appearance, and waived the issuance of process, and al-
lowed it without objection. He himself knew the char-
acter of the claim, and the object of its presentation,
because the evidence shows that the appellee, Marietta
E. Coleman, asked him about the claim, and he told her

that it was for her protection. He thus made the same statement to her which was made to her by her uncle, James E. Marshall; and whether the statements made by James E. Marshall to appellee, Marietta, in the presence of her grandmother, were competent or not in view of the absence at that time of the appellant, it is proven that the matter of this claim was talked of with James E. Marshall afterwards in the presence of the appellant. As he made the same statements in regard to it which his brother James E. Marshall had made, the admission of the testimony objected to could have done him no injury.

Where items in the account of an administrator or guardian, which are apparently regular upon their face, are allowed, there is a *prima facie* presumption in favor of their regularity; but "if it appears from the face of the account that items were improperly allowed, no such presumption will sustain them." (*Bond* v. *Lockwood*, 33 Ill. 212). Inasmuch as the items in this claim were for care and maintenance from April 17, 1880, to April 17, 1890, and the claim was not presented until January 3, 1893, against the estate of Edward B. Goodner, it is manifest that nearly all of the items in the claim had been barred by the Statute of Limitations when the claim was presented. It is true that, in the county court, there are no pleadings, and the Statute of Limitations need not be set up in writing, but the Statute of Limitations was applicable without being specially pleaded, and the defense of the Statute of Limitations should have been interposed by the appellant. In *Bromwell* v. *Estate of Bromwell*, 139 Ill. 424, we said (p. 427): "If these transactions were in fact loans of money, they created an indebtedness which was evidenced by no writing, and which was therefore subject to the limitation of five years. No evidence was offered tending to take the case out of the statute, or to bring it within any of the exceptions therein contained, and the plaintiff's claim must therefore be held to have been barred by limitation nearly five years before it was

filed in the probate court. No formal pleadings being required in the probate court, the Statute of Limitations applied without being specially pleaded, and under the evidence in the record, there can be no question that it constitutes a complete bar to said claim."

Some authorities hold that an administrator is not obliged to plead the general statute of limitations in actions on claims against the estate, and others hold that it is the duty of the personal representative to interpose the bar of the statute on every claim not properly asserted within the statutory period. (11 Am. & Eng. Ency. of Law,—2d ed.—p. 919; 2 Woerner's Am. Law of Admn. —2d ed.—sec. 401).

The tendency of the decisions in this State has been in favor of the position, that the statute should be insisted upon by the administrator against claims, which are barred by its terms. (*McCoy* v. *Morrow*, 18 Ill. 519; *Unknown Heirs* v. *Baker*, 23 id. 484; *Stillman* v. *Young*, 16 id. 318; *Bromwell* v. *Schubert*, 40 Ill. App. 330). Where an administrator, through bad faith or by failure to exercise reasonable diligence, diminishes the funds in his hands for distribution, he should be required to account, and can be compelled to render a just and true accounting by the probate court in the exercise of its equitable jurisdiction. (*In re Corrington*, 124 Ill. 362; *Whitney* v. *Peddicord*, 63 id. 249).

But even where it is held, that an administrator is not obliged to plead the general statute of limitations in actions on claims against the estate, he is only justified in not pleading the statute, when the claim is "otherwise justly due" or "otherwise well founded." (11 Am. & Eng. Ency. of Law,—2d ed.—p. 919; 2 Woerner's Am. Law of Admn.—2d ed.—sec. 401). As it is clear from what has already been said, that the claim now under consideration was not justly due or well founded, it was the duty of appellant to interpose that statute as a defense.

The claim is for care and maintenance of a grandson, Edward B. Goodner, for ten years, by a grandmother, Harriet E. Marshall.   During the ten years in question Edward B. Marshall, the husband of Harriet E. Marshall, was alive, and was the head of the family.  If any claim for care and maintenance existed, it was not in favor of Harriet E. Marshall, but in favor of the estate of Edward B. Marshall, deceased.   During the years in question Edward B. Goodner was a member of the family of his grandfather, and the care and maintenance, which were extended to him by his grandfather, are presumed to have been so extended gratuitously in the absence of evidence as to any arrangement they were to be paid for. (*Heffron* v. *Brown*, 155 Ill. 322; *Switzer* v. *Kee*, 146 id. 577; *Miller* v. *Miller*, 16 id. 296; *Faloon* v. *McIntyre*, 118 id. 292; *Brush* v. *Blanchard*, 18 id. 46; *Collar* v. *Patterson*, 137 id. 403). No evidence appears in this record to rebut the presumption, that the care and maintenance referred to in this bill were furnished to the deceased, Edward B. Goodner, by his grandfather gratuitously.  There is nothing to show, that it was ever the intention of the grandfather to charge his grandson with the support which he gave him. No entry of any charge was made in his books.   The facts in regard to the relations of these parties were not presented to the county court, and no defense was made to the claim by the administrator upon the grounds here suggested.   In this respect there was a gross neglect of his duty as administrator by the appellant.  As administrator, he was charged with a trust, and with the duty of protecting the estate against unjust claims.  We are of the opinion, that the action of the lower courts in charging appellant with the above amount so paid out upon this claim, and interest thereon, was correct.

*Third*—The next contention is in reference to the advancement, which is alleged to have been made by Edward B. Marshall in his lifetime to his daughter, Melvina E. Goodner, and her husband, Lyman T. Goodner.  This

matter of the advancement was not broached, or put into tangible shape, until several years after the deaths of both Edward B. Marshall and Edward B. Goodner. Appellant says, that Edward B. Marshall advanced $7000.00 to his daughter, Melvina E. Goodner, and her husband, during his lifetime in various sums from time to time during the period from May 1, 1866, to October 1, 1878. There is no written evidence, that any such advancement was made or intended by the deceased, Edward B. Marshall. James E. Marshall paid to the appellee, Marietta E. Coleman, and to the estate of Edward B. Goodner, deceased, their distributive share in the estate of their grandfather without making any deduction for such advancement. He, therefore, could not have known of it when he paid over such distributive share, although it is claimed by appellant that it was a matter of "family knowledge." James E. Marshall presented a petition to the county court, saying that he had paid over the amount of such advancement, to-wit, $7000.00 to the two grandchildren of Edward B. Marshall by "mistake and inadvertence;" and the county court was requested to enter an order, and did enter an order, directing the appellant, as administrator of Edward B. Goodner's estate, to pay back $3500.00, the one-half of the alleged advancement. If there was no advancement, then the refunding of this $3500.00 by the appellant to James E. Marshall, administrator of Edward B. Marshall's estate, was wrong.

Section 7 of chapter 39, Revised Statutes, in regard to "Descent" provides as follows: "No gift or grant shall be deemed to have been made in advancement unless so expressed in writing or charged in writing, by the intestate, as an advancement, or acknowledged in writing by the child or other descendant." (2 Starr & Cur. Ann. Stat. —2d ed.—p. 1432). In view of this statute this court has held in several cases, that an advancement, which is not evidenced in the manner required by the statute, is in legal effect no advancement at all, however clear it may

appear that it was so intended. (*Long* v. *Long*, 118 Ill. 638; *Bartmess* v. *Fuller*, 170 id. 193; *Wilkinson* v. *Thomas*, 128 id. 363). In *Wilkinson* v. *Thomas, supra,* we held that parol statements and oral declarations are insufficient to establish an advancement. When the order was made by the county court, allowing the $3500.00 in question to be refunded, no evidence was produced before that court to sustain the claimed advancement. Indeed, the county judge himself testifies in this case, that no evidence was offered in favor of the claims of Harriet E. Marshall, Charles P. Marshall or W. Scott Marshall against Edward B. Goodner's estate, except that shown by the claims themselves, and that no evidence was offered in favor of the refunding of the $3500.00, mentioned in the petition of J. E. Marshall, other than the petition itself, as shown among the files in the case. But, upon the hearing upon the exceptions filed to the final report of appellant, he makes a statement in regard to this advancement, and his statement is the only evidence upon the subject. It is to be noted, that the appellant is in this matter an interested witness, testifying against the heirs and estate of his deceased nephew, Edward B. Goodner, because, when the amount of the advancement is returned to the estate of Edward B. Marshall, deceased, a distributive portion thereof, amounting, with the inherited interest of the deceased, Xenophon S. Marshall, to the sum of $1600.00, or thereabouts, goes to the appellant, as a son and heir of E. B. Marshall.

Appellant says, that he and his father, E. B. Marshall, were partners in the banking business at Centralia, and in such business used a ledger which was opened in 1873; that his father, E. B. Marshall, carried some individual accounts in this partnership ledger; that, not earlier than 1873 or later than 1875, E. B. Marshall showed appellant an account on the ledger against Lyman T. Goodner and wife, headed "To advancement charged." He says, that E. B. Marshall footed up the account and it amounted to

187—37

$7600.00; that, after the death of E. B. Marshall, his administrator made a search for the book and it could not be found; that in 1892, two years after the death of E. B. Marshall, this book was found in a wood-shed, with the leaf, which is alleged to have contained the advancement, torn out. Appellant swears, that he did not tear the leaf out, and James E. Marshall swears that he did not tear it out. The index to the ledger under the letter "G" was offered in evidence by appellant, and it showed "L. T. Goodner." The index would seem to point to an account in the ledger against L. T. Goodner, and not against Melvina E. Goodner. In their opinion deciding this case, the Appellate Court say: "We are not satisfied that the advancement was established by legal evidence, either as to its origin, or its continuance, if so established." We agree with this conclusion of the Appellate Court.

In the first place, the document, dated January 14, 1895, being the first paper which appears in this record in regard to the advancement, describes the moneys advanced as having been "received from year to year from May 1, 1866, up to October 1, 1878, amounting to the sum of $7000.00." That is to say, Edward B. Marshall is represented as having made advancements to his daughter, Melvina, during a period of more than two years after her death. The evidence does not show the exact date of the death of Melvina E. Goodner, the first wife of Dr. Lyman T. Goodner, but it does show that Dr. Lyman T. Goodner married his second wife on August 24, 1876. Marshall could not, therefore, have made advancements to his daughter, Melvina E., as late as October 1, 1878, when the account in regard to the advancements is stated to have ended. Appellant says, that the amount of the advancements, as shown by the ledger, was $7600.00, and yet the amount claimed was only $7000.00. The ledger referred to was appellant's own book, because he states that it was a book belonging to the partnership between

himself and his father. He cannot make evidence for himself by entries in his own books. It appears that this book was brought to the bank, of which the appellant was president, and of which his brother, James E. Marshall, was cashier, after the death of his father. It is said, that the leaf, on which the advancement charges were made, was torn out of the book. As it is denied that such mutilation was made by either appellant, or his brother, James E. Marshall, the presumption is that the leaf, if any leaf in the book contained advancement charges, was torn out by the deceased, Edward B. Marshall himself. The ledger was found in his wood-shed upon his homestead premises, as we understand the evidence. It must, therefore, have been in his own possession at the time of his death. Where a will is found in a mutilated condition in the possession of a testator after the latter's death, and there is no evidence to fix the spoliation on any other person, the court will presume that it was done by the testator with the intention of canceling the will. (*Moore* v. *Moore*, 1 Phil. 375; *Lexley* v. *Jackson*, 3 id. 126; *Wilson* v. *Wilson*, id. 552; *Davis* v. *Davis*, 2 Adams, 223; *Taylor* v. *Pegram*, 151 Ill. 106; *Boyle* v. *Boyle*, 158 id. 228). There is nothing in the record to rebut the presumption that, if any leaf containing advancement charges was torn out of this ledger, it was done by the deceased, Edward B. Marshall himself *animo cancellandi.* There is no evidence in the record to show, that this $7000.00 was ever paid to Melvina E. Goodner, or her husband. It does not appear when the entries in the ledger were made, nor whether or not there were original entries in any journal before they were posted in the ledger, and, if so, when such entries were made in the journal. The appellant does not attempt to prove the contents of the leaf which, as he alleges, was torn out of the book, and which, as he further alleges, contained the items of advancement. It does no good to prove the loss of a written instrument, unless secondary evidence is intro-

duced of its contents. (*Hansen* v. *American Ins. Co.* 57 Iowa, 741; *Kearney* v. *New York*, 92 N. Y. 617). If the contents of the lost leaf were proven, it would be evidence offered in the interest of the intestate, E. B. Marshall. It would not be competent testimony, except as to such entries as are shown to have been made cotemporaneously with the facts of the record. Book accounts are only admissible in favor of the party who keeps them, when the entries are made cotemporaneously with the transactions recorded; and the same rule applies to books and entries of deceased persons. (Greenleaf on Evidence, —13th ed.—sec. 118; Wharton on Evidence, secs. 246-688; 2 Woerner's Am. Law of Admn.—2d ed.—sec. 558; *Nelson* v. *Nelson*, 90 Mo. 460). "Declarations or book entries of the donor subsequent to the transaction are inadmissible, unless they are of the *res gestœ* or against interest." (2 Woerner's Am. Law of Admn.—2d ed.—sec. 558).

The evidence is not in our opinion sufficient to show that any advancement was made as claimed. It is not contended that Nellie May Goodner, who was a minor until August 2, 1896, made any admissions or waivers in regard to this advancement, which were binding upon her. As the Appellate Court say in their opinion, "the appellant's acts, so far as this advancement is concerned, and so far as they affected Nellie May Goodner, were in fraud of her rights." Therefore, the circuit court did not err in sustaining the exceptions of the appellee, Nellie May Goodner, to the refunding of the $3500.00, so far as the $1750.00 of it, which would be distributed to her, is concerned.

The Appellate Court, however, sustained the circuit court in overruling the exceptions of the appellee, Marietta E. Coleman, to the refunding of the $3500.00, and sustained the circuit court in refusing to charge the appellant with $1750.00, the half of the $3500.00 which would belong to Marietta E. Coleman, as distributee of her deceased brother's estate, and as his heir. We cannot agree

with the Appellate Court in this conclusion. We think
that the county court decided correctly in requiring the
appellant to account for the whole of the $3500.00 paid
out by him, both the part which would go to the appel-
lee, Nellie May Goodner, and the part which would go
to the appellee, Marietta E. Coleman. What may have
been done with the $3500.00 by James E. Marshall, after
he received it, is not the question here. The question
here is whether appellant's account, as administrator,
should be surcharged to the amount of the sums wrong-
fully paid out by him.

There can be no question, that the document, dated
January 14, 1895, signed by Marietta E. Coleman, was
obtained from her by gross fraud and misrepresentation
on the part of her uncles, and their attorney in Centralia.
She signed this document when she was a resident of
Colorado, and the wife of a citizen of Colorado. It was
sent to her by mail. She at first declined to sign it, and
wrote for some information in regard to it, but finally
did sign it in view of letters written to her by her uncle,
Charles P. Marshall, and the attorney of her uncle,
W. Scott Marshall, the appellant herein. These letters
play upon her fear that her half-sister will do something
to take her estate away from her. A partition suit in
reference to the real estate seems to have been begun by
Nellie May Goodner. She was a legal heir of her de-
ceased half-brother, Edward B. Goodner, and this fact
must have been known to appellant, and his brothers.
The Illinois statute, making her half-sister an heir, was
not known to Marietta E. Coleman. The representations,
which induced her to sign the document, dated January
14, 1895, came to her in letters sent to Colorado, of which
State she was then a citizen. The maxim, *ignorantia legis
neminem excusat,* has no application here, for the reason
that mistakes as to foreign laws are regarded as mistakes
of fact. Ignorance of law, which will not excuse, is ig-
norance of the laws of one's own country or State, but

the laws of foreign countries or other States are facts. (*Schaefer* v. *Wunderle*, 154 Ill. 577). Being a resident of Colorado, she was not affected with knowledge of the statutes of Illinois, in which State she did not reside.

The document of January 14, 1895, sent to her was signed by her three uncles; one of them was the administrator of her deceased brother's estate; the other was the administrator of her grandfather's estate; and the third was the guardian of her brother. They stood to her in peculiarly confidential and fiduciary relations. Where two persons stand in such relation to each other that confidence is necessarily reposed by one in the other, and the one has over the other an influence which naturally grows out of that confidence, the abuse of such confidence or influence to obtain an advantage, at the expense of the confiding party, will not be permitted to prevail, even though the transaction could not have been impeached, if no such confidential relations had existed. (*Tait* v. *Williamson*, L. R. 2 Ch. 55; 10 Am. & Eng. Ency. of Law, p. 327; 1 id. p. 375; *Purvines* v. *Harrison*, 151 Ill. 219; *Sayles* v. *Christie, ante,* p. 420; *White* v. *Ross,* 160 Ill. 56).

In order to induce Mrs. Coleman to sign the document, dated January 14, 1895, a lawyer, who was also the father-in-law of appellant, wrote her a letter referring to the probability that a suit would be brought by her half-sister, and advising her to sign the advancement paper of January 14, 1895, expressing the opinion that her uncles would be honest with her in the matter. Her uncle, Charles P. Marshall, wrote her a letter in which he said: "When a document is signed by your three uncles, you ought to know that it means straight business, even though you do not understand the purpose at the time." It does not appear, that Mrs. Coleman was a party to any scheme to defraud her half-sister, but she was made to believe that her half-sister had no rights in the estate of her deceased brother. We agree with the Appellate Court when they say in their opinion in regard to Mrs. Cole-

man: "We are satisfied from the evidence that up to June 5, 1895, she was the dupe of designing men." We are, however, still further of the opinion, that she was the dupe of designing men on June 5, 1895, and June 25, 1895, when she signed the subsequent papers signed by her, having reference to this advancement, and mentioned in the statement preceding this opinion. They were all parts of one and the same fraudulent scheme.

As soon as the document, dated January 14, 1895, was signed by her and received by her uncles, one of them wrote her a letter on April 30, 1895, proposing to buy out her interest in the real estate of her deceased grandfather. When she came to Centralia from Colorado, she and her husband were taken to the bank, of which her uncle, the appellant, was the president, and her uncle, James E. Marshall, was the cashier, in the evening, and there remained with them all night until four or five o'clock in the morning. The appellant represented to her that it was necessary for her to keep out of the way, in order to avoid service of summons upon her in some suit, which had been instituted by her half-sister. As this suit was a simple partition suit, which her half-sister had a right to bring, it would have made no difference if she had been served with process, but she was made to believe that it was a serious matter. In addition to this, she was told by the appellant, that they had in their possession letters, written by her father in his lifetime, which, if made public, would disgrace her, and that they would disgrace her by the publication of such letters, unless she came to their terms in regard to the advancement, and in regard to the sale of her interest. In view of these and other facts, which it is impossible for us within the limits of this opinion to further comment upon, the written consents to this advancement, which were procured from her, were so procured by fraud and misrepresentation, and she ought not to be bound thereby. The validity of the deeds of her lands, which she executed

to her uncles, is not involved in this proceeding, and we pass no opinion upon that question. But the documents show, that the purchase of her interest in the land by her uncles was made use of by them, in order to force her to consent to the refunding of the advancement. She and her husband, who was a young man teaching school in Colorado, without acquaintance in Illinois, and without practical business knowledge, had no disinterested legal adviser to inform them in regard to their rights, and were imposed upon and defrauded. We are of the opinion, that the Appellate and circuit courts should have required the appellant to account for the whole of the $3500.00, which appellant paid out to the administrator of E. B. Marshall's estate on account of the portion of this alleged advancement, which had been paid to Edward B. Goodner's estate.

Appellant was properly charged with ten per cent interest. Under the statute an administrator is chargeable with ten per cent annual interest on moneys, bonds, notes and credits in his possession or control as property or assets of the estate after a period of two years and six months from the date of his letters of administration, unless good cause is shown to the court why such should not be taxed. (Rev. Stat. chap. 3, sec. 114). It appears here that appellant refused to make final settlement, and, when compelled to render a final account on citation, he filed a written protest against any order of distribution at that time, although it was about four and one-half years after his appointment. He had this money in his hands, and, as he paid it out under circumstances which required his account to be surcharged, and neglected to make settlement, he has failed to show the court good cause why the ten per cent interest should not be charged against him. (*In re Schofield,* 99 Ill. 513).

*Fourth*—It is said by the appellant that the appellee, Marietta E. Coleman, should have taken an appeal from the judgment of the circuit court, and that she was not

entitled to assign as cross-error in the Appellate Court, that the circuit court disallowed one-half of the $3500.00 above referred to. We are of the opinion that this question can be raised by the assignment of cross-errors, and a cross-error has been assigned by the appellee, Marietta E. Coleman, as to this item. The item in the reports of the administrator was one item of $3500.00, and the exceptions filed were filed to that particular item. The order, made by the county court, was an order that the appellant should refund $3500.00. This item was one, and not divisible. It has been held, that each item in an administrator's account is a separate claim depending alone upon its own merits, having no connection with the other items, and that an appeal by the administrator from an order or judgment, rejecting one of his claims against the estate, only brings up for review the propriety of the ruling in respect to such rejected claim. (*Millard* v. *Harris*, 119 Ill. 185; *Curts* v. *Brooks*, 71 id. 125; *Morgan* v. *Morgan*, 83 id. 196). This rule is applicable, as between the claim of Harriet E. Marshall for $1560.00 and the claim of Charles P. Marshall for $168.00 and the claim for the refunding of the $3500.00. Each of these claims is a separate item. The rule, however, in regard to a separate appeal from a judgment as to each separate item in an administrator's account has no application here, because the item, as to which the cross-error is assigned, was in the county court one item of $3500.00, and not two items of $1750.00 each. The allowance of a part of it, instead of the whole, does not split it into two claims. ·

*Fifth*—As to the item of $168.00 for medical charges by Charles P. Marshall against the estate of Edward B. Goodner, deceased, no appeal was taken from the order of the circuit court, or from the judgment of the Appellate Court in reference to the allowance of that item. As it was a separate item in the account, its allowance cannot be here attacked by means of the assignment of a cross-error.

*Sixth*—The appellant charges $14.88 for traveling expenses from Chicago, and return, in answer to a citation from the county court. This item of $14.88 was disallowed by the circuit court, and the order disallowing the same has been affirmed by the Appellate Court. The action of the lower courts in regard to this item was correct. After appellant was appointed administrator of the estate of Edward B. Goodner, he removed to the city of Chicago; and this item is made up of charges for his traveling expenses in coming from and returning to Chicago in answer to a citation which was issued against him, because he failed to settle his accounts. The item was properly disallowed.

*Seventh*—The complaint is made, that the costs were taxed against the appellant personally, and not against him as administrator. This action of the lower courts was proper, because the costs of this proceeding have been caused by the misconduct of the appellant himself.

The judgment of the Appellate Court is affirmed, except so far as that judgment affirmed the decree of the circuit court requiring appellant to surcharge himself with only $1750.00; and ten per cent interest, of the $3500.00 item, instead of requiring him to surcharge himself with the whole of the $3500.00 item and ten per cent interest; he should have been charged with the whole of the $3500.00 and ten per cent interest.

Accordingly, the judgment of the Appellate Court and the decree of the circuit court are reversed, so far as they failed to require appellant to surcharge himself with the whole of the $3500.00 item and ten per cent interest thereon; and the cause is remanded to the circuit court with directions to enter a decree in accordance with the views herein expressed.

*Partly affirmed and partly reversed.*