Sarah E. Donaldson, Executrix, Appellee, v. Oliver Donaldson, Appellant.

Gen. No. 13,920.

1. PARTNERSHIP—*presumption as to correctness of books of account.* While the presumption obtains as between partners that firm books are correct, such presumption is one which may be rebutted by proof.

2. PARTNERSHIP—*what error in stating account.* In stating an account between partners it is error for a master to fix an arbitrary date as a starting point in the absence of evidence that there had been, at that time, a settlement between the partners.

3. PARTNERSHIP—*when accounting will not be awarded.* If the books of account are admittedly inaccurate and in a state of confusion which precludes the reaching of a reasonably correct conclusion, the bill in such case will be dismissed.

4. PARTNERSHIP—*when books not admissible upon accounting.* To entitle firm books to be admitted upon the statement of an account between the partners, it must appear that the entries contained therein are contemporaneous with the transactions recorded.

Bill for accounting. Appeal from the Circuit Court of Cook county; the Hon. LOCKWOOD HONORE, Judge, presiding. Heard in this court at the October term, 1907. Reversed and judgment here. Opinion filed July 6, 1908.

FRANCIS E. CROARKIN, for appellant; EDWARD F. BOGART, of counsel.

GEORGE W. BARKER, for appellee.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

In June, 1865, Robert Donaldson, Samuel H. Donaldson and Oliver Donaldson, brothers, formed a partnership at Chicago for the purpose of carrying on the trade and business of ship-smiths and ship-carpenters. There was no written contract of the partnership at any time. The firm was first dissolved by the death of Robert, which occurred September 12,

1883. The two remaining brothers, Samuel H. and Oliver, bought the interest of Robert in the firm from his administratrix, each paying one-half of the purchase price, and continued the business as partners. The firm was finally dissolved by the death of Samuel H., in January, 1903. The activities of the business of the firm were discontinued November 5, 1901. During the time intervening between that date and the death of Samuel H., the business was in process of liquidation and settlement. About fifteen months after the death of Samuel H. this bill was filed by appellee, as executrix of Samuel H.'s will, for an accounting. The books of the firm were kept by Samuel H. and his two sons, Oliver H. and Robert P. Donaldson. Oliver did not participate in the bookkeeping or in the management of the finances of the firm. The evidence conclusively shows that Oliver was a blacksmith and constantly worked as such in the firm's business, and that he was no bookkeeper and did not understand bookkeeping. We also gather from the proofs that Samuel H. made no claim in his lifetime that Oliver was indebted to him, in any manner, on partnership account, and that the firm business was treated as virtually settled for some time prior to his death. Oliver answered, denying that appellee was entitled to an accounting, but afterwards filed a cross-bill, claiming that owing to inaccuracies in the books of the firm, the estate of Samuel H. was indebted to him in a considerable sum of money. The cause was referred to a master to take proofs, and he, after an extended hearing, found that appellant was indebted to Samuel's estate on partnership account in the sum of $1,921.94, and recommended a decree for that amount. Objections of appellant were overruled by the master, as likewise exceptions to the master's report by the chancellor, and a decree entered in favor of appellee, according to the recommendations of the master, and that appellant take nothing by his cross-bill.

Appellant in argument mainly rests his defense

upon the contention that the books of the firm offered and received in evidence are in such confusion and so inaccurate that everything in relation to the accounts is left in such doubt and uncertainty that justice cannot be done between the parties by rendering a finding in favor of one or the other of them, and that consequently the parties cannot invoke the aid of a court of equity, and the bill should have been dismissed.

That all of the books and documents received in evidence are of an uncertain and unsatisfactory character is apparent from the findings of the master and the observations of appellee's counsel contained in his brief. The master says in one of his findings—R. p. 54: "I find it impossible to reconcile the bank's pass-books with the account of Donaldson Brothers on any other hypothesis than that from time to time moneys received on account of work done by the firm prior to January 1, 1891, were deposited in bank and from time to time withdrawn by check and divided between the brothers, without keeping any memorandum thereof." Then the master proceeds to state an account from the books and loose-leaf accounts, excluding the bank's pass-book, from January, 1891, to September, 1902.

By this method, the account, in place of being based upon properly kept books of the firm, is stated in spite of them, and the ultimate finding rests in conjecture and surmise. Nothwithstanding appellant did not keep the books and was not, by reason of his ignorance of bookkeeping, cognizant of their contents or accuracy or inaccuracy, he is made to bear the brunt of all the defects and irregularities so admittedly appearing from an inspection of the accounts and documents in evidence. This becomes more open to criticism when it is borne in mind that the parties, by their actions in relation to the firm accounts and their conduct with each other, treated them as settled and the partnership at an end.

While it is true that a presumption obtains that as between partners the firm books will be regarded as correct *prima facie,* yet such presumption may be rebutted by proof to the contrary. That the books and documents of the firm in evidence are incorrect and unreliable cannot be seriously disputed. The evidential facts plainly and conclusively, we think, so demonstrate. Appellee's counsel say in his brief: "It is true there were many errors and the system was crude, but there were mistakes on both sides of the account." But with what conscionable reason can these mistakes be imputed and charged to appellant? Appellee, in the right of her testate, is charged with the responsibility for these errors—not appellant. The uncertainty and unfairness of the accounting is further illustrated by these quotations from the argument of appellee:

"Out of the last small bundle of documents produced by Mrs. Donaldson, the wife of Samuel H., we found paid checks and paid bills amounting to over $300, which had been omitted from the expense account. Mrs. Donaldson testifies that entirely inadvertently, and not knowing their probable value as evidence in her favor, she destroyed many checks and paid bills. It is certain that amongst them we might have found other evidences which would have increased the expense account in this accounting, and we might have found evidence of many omissions to charge his brother's withdrawal account with items. It is a great deal more easy to omit to enter charges than to make them, and Sam's carelessness in this respect was not confined to the record of collections and expenses alone; in all human probability he gave his brother hundreds of dollars which he never entered at all." So glaring a confession of inaccuracies is somewhat startling. They cannot be overcome and wiped out by the assumption that all the errors were against appellee's testate and in favor of appellant.

The argument is ingenious, but far from removing the difficulty so confessedly encountered.

And again counsel say: "Sam was undoubtedly a poor bookkeeper, for he was a blacksmith and hammered out his bookkeeping as he did his iron, but he was honest and did the best he could." However honest or however crude Sam's methods of bookkeeping may have been, he undertook to keep the books and the law imposed upon him the duty of keeping them correctly. Now that he has passed away without having made any claim against his surviving brother on partnership account, is no reason why the living brother should be compelled to pay to the deceased's surviving kin an amount arrived at by chance and guesswork, because his inaccurate method of keeping the firm books makes it impossible to state an exact and accurate account. It was erroneous for the master to state the account by fixing an arbitrary date as its starting point, in the absence of evidence that there had been at that time a settlement between the partners. The firm composed of deceased and appellant started after the death of Robert in September, 1883. At that date, without proof of a subsequent settlement, should the accounting have started.

We have examined all the accounts in the books and documents appearing in this record, and we find them in such a disorderly condition as to be wholly untrustworthy as evidence from which an account between the parties can be correctly stated and justice done to either of them. The loose leaves are clearly inadmissible on the theory that they form a part of the firm's accounts. No plausible reason is shown why the items there appearing, being correct, should not have been kept in the firm book, in which there was plenty of room to make the entries. The credits in the bank pass-books should have been used from which to check up the items appearing in the check-book. The seven loose sheets were clearly inadmissible as evidence for either party. The evidence develops as a

fact that appellant never drew but one check upon the firm bank account, and that for cash to pay the firm's workmen in the absence of the deceased.

The bill here seems to have been inspired because appellant proved a claim against the deceased's estate on a note for $2,000, which note was given in renewal of a similar note of date ten years preceding. There is nothing in this record impeaching the *bona fides* of that transaction. The books and documents upon which the master founded his recommendations are so unsatisfactory and in such confusion, with interlineations and erasures, and so confessedly inaccurate, as to be insufficient to support the master's findings.

The accounting made is far from being a just or complete account between the parties. The burden of correctly, stating the account by competent evidence rested upon appellee in the first instance. The proof offered by appellee and admitted fell far short of fulfilling such requirements, and the testimony offered by appellant added nothing to its probative force. The account as stated is, by all the evidence in this record, too uncertain and problematical to justify a decree in favor of either party.

The book accounts proffered by appellee were not admissible as evidence under the ruling in Marshall v. Coleman, 187 Ill. 556, that to entitle such books to be received in evidence in favor of the party offering them, it must be shown that the entries were made contemporaneously with the transactions recorded. This rule applies to the books and entries of a deceased person. The imperfections in the books and accounts are chargeable to the partner who kept them or under whose direction they were kept. In this case the deceased is the responsible party, and appellee cannot advantage through errors, mistakes or irregularities imputable to the deceased partner.

The books, papers and documents found in the record do not show with accuracy or precision the true

state of the accounts between the deceased and the surviving partner. Brockman v. Aulger, 12 Ill. 277.

In this condition of the record neither party is entitled to a decree under the original or cross-bill. The answer of appellant does not seek an accounting, but denies appellee's right to one, and while he interposed a cross-bill, it has the characteristic quality of a defensive pleading rather than the declaration of facts constituting an affirmative claim. We think the rule announced in Vermillion v. Bailey, 27 Ill. 230, that "On a bill filed for a settlement of partnership accounts, where the proofs and statements leave everything in such doubt and uncertainty that it is impossible to do justice, the bill should be dismissed," is applicable to this case, and consequently the decree of the Circuit Court will be reversed and an order entered here dismissing the bill and cross-bill for want of equity.

*Reversed and judgment here.*